V.I.P. BHOLA, ESQ. (SBN 183980)
LAW OFFICES OF VIP BHOLA
5429 Cahuenga Boulevard, Suite 101
North Hollywood, California 91601
Telephone: (818) 347-5297
Facsimile: (818) 221-0302
Email: vbhola@icloud.com


Attorney for Plaintiffs
RITZ FLOORING, INC. and
MORDECAI NOTIS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RITZ FLOORING, INC., a California corporation; and MORDECAI NOTIS, an individual,**<br><br>Plaintiffs,<br><br>v.<br><br>**GREEN IMAGE CONSTRUCTION, LLC,**<br>**a New Mexico limited liability company; SERGIO NUNEZ, an individual; and DOES 1 through 10, inclusive,**<br><br>Defendants. | **Case No.: _____**<br><br>**COMPLAINT FOR:**<br><br>(1) DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202);<br>(2) CONVERSION;<br>(3) TORTIOUS INTERFERENCE WITH CONTRACT;<br>(4) TRADE LIBEL / BUSINESS DISPARAGEMENT;<br>(5) UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200 et seq.); and<br>(6) FALSE ASSOCIATION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(a)(1)(A)<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -
**COMPLAINT**

## COMPLAINT

1.      This action arises from Defendants' systematic exploitation of Plaintiffs in connection with a New Mexico construction Project. Defendant Nunez lent his contractor's license to unlicensed operators to circumvent New Mexico's licensing law, converted $10,000 entrusted for corrective work, held the Project hostage by refusing to release his license from the permits after termination, and then — through a mechanic's Lien recorded against property

2.      Plaintiffs do not own and a state-court action grounded in a Contract Plaintiffs never signed — falsely associated Plaintiffs with a fabricated construction debt. The resulting harm includes over $600,000 in reliance payments, $10,000 in direct conversion, $80,000 extracted through the wrongful Lien, substantial license-hostage expenses, continuing defense costs, and reputational injury in the interstate construction industry.

3.      Plaintiff Ritz Flooring, Inc. ("Ritz") is a California flooring contractor. Plaintiff  Mordecai Notis is Ritz's principal and a California resident. Neither Plaintiff contracted with Defendants. Neither Plaintiff owns the Project property.

4.      Defendants' own documents — the recorded mechanic's Lien and the New Mexico state-court complaint — confirm this, naming third parties (not  Plaintiffs) as the contracting counterparty and naming a third party (not Plaintiffs) as the property owner. The Lien names Plaintiff Notis nowhere, yet Defendants press a Lien-foreclosure count against him personally in New Mexico.

5.      As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered aggregate losses exceeding $690,000 — detailed in the Factual Allegations below — together with continuing defense costs in the New Mexico Action and reputational harm in the interstate construction industry.

6.      Plaintiffs seek declaratory relief, compensatory and exemplary damages, restitution and disgorgement, injunctive relief including discharge of the wrongful Lien, and recovery of attorney fees and costs as authorized by law.

7.      This Complaint is brought under the diversity jurisdiction of this Court, 28 U.S.C. § 1332(a), and under the federal-question jurisdiction of this Court, 28 U.S.C. § 1331, by virtue of Plaintiffs' Lanham Act claim under 15 U.S.C. § 1125(a)(1)(A).

## I.      JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert a federal claim arising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), as set forth in Count Six below.

9.      This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Ritz Flooring, Inc. is a California corporation with its principal place of business in Van Nuys, California. Plaintiff Mordecai Notis is a citizen of California. Defendant Green Image Construction, LLC is a limited-liability company organized under the laws of New Mexico, none of whose members is a citizen of California.

10. Defendant Sergio Nunez is a citizen of New Mexico. Diversity jurisdiction provides a fully independent basis for this Court's subject-matter jurisdiction that does not depend on the viability of any federal-question claim. The amount in controversy is independently satisfied by Plaintiffs' conversion claim ($10,000), the Lien-extraction loss ($80,000), and the license-hostage expenses, each of which arises from conduct directed at Plaintiffs in California.

11. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a), in that those claims form part of the same case or controversy as the Lanham Act claim within the meaning of Article III of the United States Constitution. This Court has further authority to issue declaratory relief under 28 U.S.C. §§ 2201–2202.

12. This Court has personal jurisdiction over each Defendant. Defendants purposefully directed their conduct at California by: (a) inducing Plaintiff Ritz, a California corporation, to wire funds from a California bank account in response to representations directed at Plaintiff Notis, a California resident; (b) inducing Plaintiff Ritz to make substantial payments from California in reliance on Defendant Nunez's false associational representation; (c) communicating demands to Plaintiffs in California; (d) effecting service of the New Mexico Action on Plaintiffs in California; and (e) targeting California-domiciled commercial actors with a course of conduct calculated to extract payment from California.

**COMPLAINT**

13.     Unlike the Defendants in *Walden v. Fiore*, 571 U.S. 277 (2014), who merely caused harm felt in the forum state, Defendants here affirmatively reached into California: Defendant Nunez personally solicited a $10,000 wire transfer from Plaintiff Ritz's California bank account; Defendants participated in seven to eight Zoom conferences directed at Plaintiff Notis in California; and Defendants' license-fronting representation was directed at and relied upon by California-domiciled commercial actors whose capital was solicited from California. These contacts satisfy the purposeful-direction analysis under *Walden* and the effects test under *Calder v. Jones*, 465 U.S. 783 (1984), because Defendants' forum contacts were created by Defendants' own conduct — not merely by Plaintiffs' decision to reside in California.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including (a) Ritz's receipt of Defendants' representations in this District, (b) Ritz's wire transmission of $10,000 from a Chase Bank account in this District to Defendant Nunez, (c) Ritz's commitment of capital and disbursement of in excess of-$600,000 in Project-related payments from this District, and (d) the injury Plaintiffs sustained — economic loss and reputational harm — that was inflicted in this District where Plaintiffs reside and do business.

## II.     THE PARTIES

**15.** Plaintiff Ritz Flooring, Inc. is a California corporation with its principal place of business in Van Nuys, California. Ritz is a commercial flooring contractor whose work serves institutional and commercial clients across multiple states.

**16.** Plaintiff Notis is an individual residing in California. Notis is the principal of Ritz Flooring, Inc. and was the natural person engaged in the communications and conduct on Ritz's behalf described herein. Notis is personally named as a Defendant in the New Mexico Action and is personally exposed to the relief sought in that action, including its Lien-foreclosure count.

**17.** Defendant Green Image Construction, LLC ("Green") is a New Mexico limited-liability company. On information and belief, Defendant Sergio Nunez is its sole or principal member and manager.

**18.** Defendant Sergio Nunez ("Nunez") is an individual residing in New Mexico. Nunez holds a New Mexico Construction Industries Division contractor's license that he has used in succession through at least four distinct legal entities, including Green Image Construction LLC, Fuerza Toro LLC, AAA Abatement LLC, and EGRC Construction LLC.

**19.** Green and Nunez are sometimes collectively referred to herein as "Defendants."

**20.** Plaintiffs are informed and believe, and on that basis allege, that Defendants Does 1 through 10 are persons or entities, presently unknown to Plaintiffs, who participated in, ratified, or aided the wrongful conduct alleged.

**21.** Plaintiffs will amend this Complaint to allege the true names and capacities of such Defendants when ascertained.

**22.** The recorded mechanic's Lien at the heart of this dispute identifies the property owner as Esther Kaplan and identifies Defendants' counterparty under the alleged agreement as "Douglas Fierro (DMF Construction INC)." The New Mexico Action contradicts the Lien on owner identity by alleging that "500 Cares Lane NM, LLC" — not Esther Kaplan — owns the property. DMF Construction, Inc. and its principal Douglas Martin Fierro, together with the entity Defendants identify as the property owner, are non-parties to this action. Neither Plaintiff owns the property. Neither Plaintiff is the contracting counterparty named in either of Defendants' sworn instruments.

## III.    FACTUAL ALLEGATIONS

### A. The Project Background

**23.** The construction Project at the center of this dispute is a renovation at the property located at 500 Care Lane, Aztec, New Mexico (the "Project"). The Project site is a commercial care facility permitted under San Juan County Permit No. 2309-0126-REM as an I-2 Institutional occupancy.

**24.** Defendants admit in the New Mexico Action that, before Defendant Nunez's involvement, the Project had been undertaken by unlicensed contractors and had been halted by the County: "Prior to Green Image's involvement, the renovation work at the property had been performed by contractors who were not properly-licensed in New Mexico, and the San Juan County Building Department had issued a stop-work order or 'red tag' threat, halting the Project." (NM Compl. ¶ 9.)

**25.** Defendants further admit that "all of the contractors who had worked on the Project prior to Green Image were unlicensed." (NM Compl. ¶ 14.)

**B. The Construction Contract — Plaintiffs Are Not Parties to It**

**26.** On or about October 22, 2023, the contracting parties for the Project executed a written Construction Contract (the "Contract"). The Contract is attached as Exhibit 1.

**27.** The Contract identifies the parties as: (a) Aztec Healthcare and DMF Construction, Inc., as owner/general; and (b) Green Image Construction, LLC, as contractor.

**28.** Neither Plaintiff Ritz Flooring, Inc. nor Plaintiff Mordecai Notis is named in the Contract. Neither Plaintiff signed the Contract. Neither Plaintiff guaranteed the Contract in writing.

**29.** The Contract by its express terms excludes labor and materials from the contractor's scope. Defendants admit this in the New Mexico Action: "[T]he Contract does not include labor or materials." (NM Compl. ¶ 22.)

30.    Defendants admit in the New Mexico Action that they performed all work for the Project "under an agreement with Douglas Fierro (DMF Construction INC)" — not under any agreement with Plaintiffs. This admission appears on the face of the Lien Defendants recorded. (Ex. 3, Lien at p. 1.)

31.    Defendants further admit that the entity they treated as their owner-side counterparty — DMF Construction, Inc. — lacked authority to enter the Contract for Aztec: "DMF had no authority to bind Aztec to the Contract or to act as Aztec's agent." (NM Compl. ¶ 67.)

32.    The combined effect of the foregoing admissions, all supported by Defendants' own sworn instruments, is that no contractual privity exists or has ever existed between Defendants and either Plaintiff.

**C. Defendant Nunez's License-Fronting Scheme and Its Cost to Ritz in Excess of $600,000**

33.    The Project required, by law, a properly-licensed New Mexico contractor to obtain and maintain the construction permits necessary for the I-2 Institutional renovation. Defendant Nunez held such a license issued by the New Mexico Construction Industries Division.

34.    From the inception of Defendant Nunez's involvement with the Project, Defendant Nunez engaged in a scheme to lend his contractor's license to unlicensed parties — including non-party DMF Construction, Inc. and the previously red-tagged contractors who could not lawfully proceed — so that those unlicensed parties could continue to operate the Project under cover of Defendant Nunez's licensed status.

**COMPLAINT**

35. Defendant Nunez's lending of his license was undertaken solely to circumvent New Mexico's Construction Industries Licensing Act, NMSA 1978, § 60-13-1 et seq., which prohibits unlicensed parties from performing the construction work the Project required. The license-fronting was not a legitimate subcontracting or supervision arrangement. It was a regulatory workaround. Defendant Nunez did not perform Project work himself; he sold the regulatory protection of his license to parties who could not lawfully operate the Project on their own.

36. Defendant Nunez admits the license-fronting in his own contemporaneous documents. The default letter Defendant Nunez attached to the Lien expressly acknowledges that "unauthorized workers" used "the permits... pulled under my license" — confirming, in Defendant Nunez's own words, that his role on the Project was the placement of his license at the disposal of unlicensed third parties.

37. Defendant Nunez's placement of his license on the Project permits constituted an affirmative associational representation that the Project was a legitimate, regulatorily compliant enterprise under his direct supervision. Having made this public representation, Defendant Nunez had a duty to disclose the true nature of his involvement. Instead, Defendant Nunez deliberately concealed from Plaintiff Ritz that he was merely "renting" his license to DMF Construction, Inc., a legally unlicensed entity, in a scheme to bypass San Juan County's stop-work orders.

**38.** Plaintiff Ritz's disbursements to DMF Construction, Inc. and other Project participants were not ordinary subcontractor-to-general-contractor vendor payments, but rather investment-level capital commitments made to sustain the Project's momentum. Plaintiff Ritz made these financial commitments relying entirely on the engineered illusion of regulatory legitimacy created by Defendant Nunez's license, and compounded by Nunez's fraudulent omission of the license-renting scheme. Had Defendant Nunez informed Plaintiff Ritz of the concealed truth—that DMF Construction was an unlicensed operator utilizing a rented regulatory front—Plaintiff Ritz would have immediately recognized the enterprise as unlawful and would never have advanced in excess of $600,000 in progress payments, labor, and materials.

**39.** The associational representation was false. The Project was not operating under a properly-licensed contractor's responsibility and supervision. It was operating under unlicensed parties who were using Defendant Nunez's license as regulatory cover. Defendant Nunez knew this. Defendant Nunez intended this. Defendant Nunez profited from this through the consideration he received for the license-lending arrangement.

**40.** Plaintiff Ritz relied on Defendant Nunez's associational representation in deciding to make and continuing to make payments to DMF Construction, Inc. and other Project participants. The total payments Plaintiff Ritz made to DMF Construction, Inc. and other Project participants in reliance on Defendant Nunez's license-association with the Project exceed $600,000.

**41.** But for Defendant Nunez's associational representation — placement of his license on the Project permits and continued lending of that license to the unlicensed parties operating the Project — Plaintiff Ritz would not have made the payments referenced in the preceding paragraph. The Project would have been halted by San Juan County. No permits would have issued. No progress representations could have been made on the strength of permit-compliant standing. Plaintiff Ritz would have withdrawn from the Project rather than commit capital to an unlicensed, unpermitted, regulatory noncompliant construction enterprise.

**42.** Defendant Nunez's lending of his license to circumvent New Mexico's licensing law has thereby directly and proximately caused Plaintiff Ritz losses in excess of $600,000.

### D. The Project Trip and the $10,000 Wire

**43.** During the Project's progress phase, Defendants participated in approximately seven to eight Zoom conferences with Plaintiff Notis, in which DMF representatives and Defendant Nunez represented that work was advancing as planned. Defendants admit these conferences occurred: "Green Image, DMF and Notis conducted seven to eight Zoom conferences during which DMF provided updates regarding the progress of the Project." (NM Compl. ¶ 27.)

**44.** In or about April 2024, Plaintiff Notis traveled from California to New Mexico to inspect the Project. Upon arrival, Notis found the Project abandoned. The work-in-place did not correspond to the progress representations made during the Zoom conferences. Notis immediately recognized that the Project had been mismanaged and that substantial remedial work would be required.

**45.** During this trip, Defendant Nunez approached Notis with a representation that he, Nunez, was the licensed New Mexico electrical contractor who could perform the corrective electrical work necessary to restore the Project to permit-compliant status. Nunez represented that he required a $10,000 rush-job advance to begin this corrective work immediately.

**46.** Relying on Nunez's representations, on April 26, 2024, Ritz Flooring, Inc. wired $10,000 from its Chase Bank business account ending 8195 to Sergio Nunez personally. The wire confirmation is attached as Exhibit 4.

**47.** The wire was sent at 4:48 p.m. Eastern Time on April 26, 2024. The recipient identified on the wire was "SERGIO NUNEZ" individually — not Green Image Construction, LLC, not Fuerza Toro LLC, not any other corporate vehicle.

**48.** Defendants performed no work in exchange for the $10,000. Nunez did not arrive on site as represented. Nunez did not commence the corrective electrical scope he had described. Nunez did not produce any deliverable, materials order, subcontractor engagement, or evidence of any kind that the $10,000 had been applied to Project work.

**49.** Defendants admit receipt of the $10,000 on the face of the recorded Lien. (Ex. 3, Lien at p. 1 ("Amount received: $10,000").) Defendants nonetheless contradict their own admission in the New Mexico Action, alleging that they "have not been paid by any of the parties" — a statement irreconcilable with their Lien's contemporaneous acknowledgment. (NM Compl. ¶ 33.)

**50.** Plaintiff Ritz has at all times retained ownership of and entitlement to the $10,000. Defendants have not returned the funds. Defendants have not provided any value to Plaintiff Ritz in exchange for the funds. The $10,000 remains in Defendants' wrongful possession.

**E. Defendant Nunez's Refusal to Release His License from the Project Permits**

**51.** After taking the $10,000 and performing no work, Defendant Nunez's services on the Project were terminated by the property owner. Defendants admit this in the New Mexico Action: "Kaplan terminated Green Image's work on the Project by email." (NM Compl. ¶ 28.)

**52.** Upon termination, Defendant Nunez had no further legal or contractual entitlement to keep his New Mexico contractor's license attached to the Project permits, including San Juan County Permit No. 2309-0126-REM. Under New Mexico construction-licensing regulation, a contractor's license is properly maintained on a permit only so long as the licensed contractor remains responsible for the work performed under that permit. Once Defendant Nunez's services were terminated, the license should have been released so that a replacement licensed contractor could be engaged to complete the Project and so that the Project could proceed to permit-compliant completion.

**53.** Defendant Nunez deliberately refused to release his license from the Project permits. Defendants admit this conduct: "Mr. Nunez immediately notified Aztec, DMF, and Ritz that they could not continue to use the permits issued under his license." (NM Compl. ¶ 41.)

**54.** The refusal to release the license was undertaken for an improper purpose. Defendant Nunez knew, or in the exercise of ordinary care should have known, that his refusal would:

**a.** Block the property owner from continuing the Project work;

**b.** Prevent the property owner from engaging a replacement licensed contractor without first satisfying Defendants' monetary demands;

**c.** Stall the Project's payment cascade, including the owner-to-Ritz payment stream for Ritz's properly-performed flooring work;

**d.** Force Plaintiff Ritz to demobilize crews and equipment that had been deployed for Ritz's Project scope;

**e.** Compel the Project participants — including Ritz and the property owner — to incur substantial expenses associated with re-licensing, re-permitting, demobilization, and Project delay; and

**f.** Increase Defendants' leverage to extract payment from non-obligors, including Plaintiffs.

**55.** Defendant Nunez intended these consequences. The refusal to release the license was not an accident or oversight; it was a deliberate act calculated to inflict economic pressure on Plaintiffs and others.

**56.** As a direct and proximate result of Defendant Nunez's wrongful refusal to release his license from the Project permits, Plaintiff Ritz incurred substantial expenses, including, without limitation:

**a.** Costs of demobilizing Ritz crews and equipment that had been deployed to perform Ritz's flooring scope;

**b.** Storage costs for Ritz-supplied materials, finishes, and equipment held in anticipation of resumed Project work;

**c.** Idle-workforce costs for personnel committed to the Project who could not be redeployed because of the indefinite duration of the delay;

**d.** Carrying costs, including insurance, bonding, and overhead, attributable to the delayed Project;

**e.** Replacement-licensing and re-permitting costs that flowed back to Plaintiffs through the owner payment cascade;

**f.** Lost opportunity costs from Ritz's inability to redeploy committed capacity to other commercial flooring engagements during the delay; and

**g.** Re-mobilization costs incurred when the Project ultimately resumed under a replacement licensed contractor.

57.     The expenses identified in paragraph 50 above are separate from, and in addition to, the in excess of-$600,000 in inducement-reliance payments Plaintiff Ritz made under Defendant Nunez's license-fronting representation, the $10,000 directly converted by Defendant Nunez, and the $80,000 deducted from amounts payable to Ritz because of the wrongful Lien.

**F. The Recorded Lien and the False Public Association of Plaintiffs**

**COMPLAINT**

**58.** On May 23, 2024, Defendant Nunez recorded with the San Juan County Clerk a "Claim of Lien" against the Project property (the "Lien"), as Instrument No. 202404142, recorded in Book 1709 at Page 331. A copy of the recorded Lien is attached as Exhibit 3.

**59.** The Lien claims a balance due of $185,000. The Lien is internally and externally inaccurate in multiple particulars, each of which is established by Defendants' own contemporaneous documents:

a. **Counterparty mismatch.** The Lien states that Defendants furnished services "under an agreement with Douglas Fierro (DMF Construction INC)." Plaintiffs are not named on the Lien.

b. **Property owner mismatch.** The Lien identifies the property owner as "Esther Kaplan." Defendants contradict this in the New Mexico Action by alleging that "500 Cares Lane NM, LLC" — not Esther Kaplan — owns the property. (NM Compl. ¶¶ 29, 32.) Defendants' own sworn instruments are mutually irreconcilable on who owns the property they purport to encumber.

c. **Arithmetic inconsistency.** The Lien claims $185,000. The Lien acknowledges receipt of $10,000 against a Contract sum of $150,840 — yielding a mathematical ceiling of $140,840. The Lien's $185,000 figure represents an unexplained inflation of $44,160 over the documentation Defendants themselves attached.

**COMPLAINT**

**d. No labor or materials.** The Contract by its terms excludes labor and materials. New Mexico mechanic's Lien law, NMSA 1978, § 48-2-1 et seq., requires actual furnishing of labor or materials.

**e. Mordecai Notis is not named.** The Lien names Plaintiff Notis nowhere — not as obligor, not as counterparty, not as owner, not as guarantor.

60. The Lien was recorded in the San Juan County land records, where it is publicly searchable and publicly visible to participants in the construction industry, to credit reporting services, to title companies, to lenders, and to Plaintiffs' prospective business counterparts.

61. On information and belief, Defendant Nunez incorporated successor entity Fuerza Toro LLC on the same day he recorded the Lien — May 23, 2024 — as part of a pattern of using fictitious-business-name shells to insulate his collection activity from accountability.

**G. The $80,000 Lien-Release Extraction**

62. After recording the Lien, Defendants demanded payment from the property owner to release the Lien.

63. On information and belief, the property owner paid Defendants $80,000 in exchange for Defendants' release or partial release of the Lien.

64. The property owner thereafter deducted that $80,000 from amounts otherwise payable to Plaintiff Ritz Flooring, Inc. for Ritz's properly-performed flooring work on the Project. The deduction reduced Ritz's recovery on the Project by $80,000.

**65.** The $80,000 owner payment was, in substance and effect, money taken from Ritz by Defendants through the mechanism of the wrongful Lien. Ritz never owed Defendants any money. The Lien created the leverage; the owner-deduction transmitted the loss to Ritz.

### H. The New Mexico Action

**66.** On November 13, 2025, Defendants filed an action against Plaintiffs and others — Case No. D-1116-CV-2025-01602 — in the Eleventh Judicial District Court of New Mexico, San Juan County (the "New Mexico Action"). The New Mexico Action is attached as Exhibit 2.

**67.** The New Mexico Action names as Defendants Aztec Healthcare LLC, 500 Cares Lane NM LLC, Esther Kaplan, Ritz Flooring, Inc., Notis   (individually), DMF Construction, Inc., and Douglas Martin Fierro (individually).

**68.** The New Mexico Action asserts four counts: breach of Contract, unjust enrichment, account stated, and foreclosure of mechanic's Lien. The breach  of Contract count is brought against Plaintiffs despite Defendants' admission, in the same pleading, that no written Contract exists between Defendants and either Plaintiff. (NM Compl. ¶ 11.) The unjust enrichment and account stated counts are brought against Plaintiffs despite Defendants' admission, in the same pleading, that the Contract excludes labor and materials. (NM Compl. ¶ 22.)

**69.** The foreclosure-of-Lien count is structurally limited by Defendants' own admission in the New Mexico Action to the owner's property only: "The remedies sought in this count are limited to in rem relief against the property only." (NM Compl. ¶ 68.) Defendants nonetheless press the foreclosure count against Plaintiff Notis personally — an individual whose name appears nowhere on the Lien that the count purports to foreclose.

### I. Communications to Third Parties

**70.** In addition to the public statements made through the recorded Lien and the New Mexico Action, Defendants have made oral and written communications to third parties — including the property owner, contractors and subcontractors on the Project, and other participants in the regional construction industry — falsely associating Plaintiffs with the asserted unpaid debt. These communications, on information and belief, were made for the purpose of damaging Plaintiffs' commercial reputation and inducing third parties to refuse or withdraw business from Plaintiffs.

### J. The Continuing Wrong and the Harm

**71.** Defendants' wrongful conduct is continuing. Defendants have not returned the $10,000. Defendants have not withdrawn the Lien. Defendants are actively prosecuting the New Mexico Action against Plaintiffs. Defendants continue to publicly associate Plaintiffs' names with the asserted but unowed debt.

**72.** The harm Plaintiffs have suffered as a direct and proximate result of Defendants' conduct includes, without limitation:

**COMPLAINT**

**a. License-Fronting Damages.** In excess of $600,000 paid by Plaintiff Ritz to DMF Construction, Inc. and other Project participants in reliance on Defendant Nunez's false associational representation that the Project was operating under his valid contractor's license, none of which payments would have been made but for that representation.

**b. Conversion.** $10,000 in direct loss from the misdirected April 26, 2024 wire.

**c. License-Hostage Expenses.** Substantial expenses caused by Defendant Nunez's deliberate refusal to release his license from the Project permits, as enumerated in paragraph 50 above.

**d. Lien Extraction.** $80,000 in indirect loss from the owner's deduction of the Lien-release payment from amounts payable to Ritz.

**e. Defense Costs.** Continuing defense costs in the New Mexico Action for both Plaintiffs.

**f. Reputational Harm.** Reputational harm in the interstate construction industry through Defendants' public association of Plaintiffs' names with a fabricated debt.

**g. Continuing Exposure.** Continuing exposure under the New Mexico Action's prayers for additional monetary relief.

## IV.    CAUSES OF ACTION COUNT ONE — DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)

*(By Both Plaintiffs Against Both Defendants)*

**73.**     Plaintiffs incorporate paragraphs 1 through 72 above by reference.

**74.**     An actual and justiciable controversy exists between Plaintiffs and Defendants regarding (a) whether Plaintiffs owe Defendants any money on any theory, contractual or otherwise; (b) whether the Lien is valid against any interest of Plaintiffs; and (c) whether the foreclosure count in the New Mexico Action is legally cognizable against Plaintiff Notis personally given that the Lien names him nowhere.

**75.**     Defendants contend that Plaintiffs are jointly and severally obligated to pay Defendants on theories of Contract, account stated, unjust enrichment, and Lien-foreclosure. Plaintiffs deny all such obligations and contend that Defendants' own sworn instruments — the Contract and the Lien — preclude every such theory as applied to Plaintiffs.

**76.**     Plaintiffs seek a declaratory judgment that:

**a.** No Contract, express or implied, exists between Plaintiffs and Defendants;

**b.** Plaintiffs owe Defendants no money on any theory;

**c.** Any alleged oral guarantee is unenforceable under the statute of frauds and any analogous state-law principle;

**d.** The Lien is invalid as against any interest of either Plaintiff;

**e.** The foreclosure count in the New Mexico Action is legally insufficient as a matter of law as to Plaintiff Notis because the Lien names him nowhere; and

**f.** Plaintiffs are entitled to the discharge of the Lien.

## V.     COUNT TWO — CONVERSION

*(By Plaintiff Ritz Flooring, Inc. Against Both Defendants)*

**77.** Plaintiff Ritz incorporates paragraphs 1 through 76 above by reference.

**78.** On April 26, 2024, Plaintiff Ritz Flooring, Inc. held ownership of and the right to immediate possession of $10,000 in funds maintained in its Chase Bank business account ending 8195.

**79.** On that date, Plaintiff Ritz wired the $10,000 to Defendant Sergio Nunez personally in reliance on Nunez's representation that he would apply the funds to immediate corrective electrical work on the Project. The funds were entrusted to Defendant Nunez for the specific and limited purpose described, not as a payment for value already rendered.

**80.** Defendants performed no work in exchange for the $10,000. Defendants did not commence the corrective electrical scope. Defendants did not procure materials, engage subcontractors, or take any documented step furthering the represented work.

**81.** Defendants exercised dominion over the $10,000 inconsistent with Plaintiff Ritz's ownership and right to possession by (a) receiving the funds, (b) retaining the funds, (c) failing to perform the represented work for which the funds were tendered, and (d) refusing to return the funds upon Plaintiff Ritz's demand.

**82.** The $10,000 is identifiable as a specific sum, transmitted on a specific date, from a specific account, to a specifically named individual recipient. *Welco Electronics, Inc. v. Mora*, 223 Cal. App.4th 202, 211 (2014) (identifiable money is the proper subject of conversion).

**83.** Defendants' contemporaneous acknowledgment of receipt appears on the face of the Lien, which records "$10,000" as the amount received. (Ex. 3, Lien at p. 1.) Defendants' subsequent statement in the New Mexico Action that they "have not been paid by any of the parties" (NM Compl. ¶ 33) is irreconcilable with that acknowledgment.

**84.** As a direct and proximate result of Defendants' conversion, Plaintiff Ritz has suffered damages in the amount of $10,000, plus prejudgment interest at the maximum lawful rate from April 26, 2024, plus consequential damages.

**85.** Defendants' conduct was malicious, oppressive, and undertaken with conscious disregard for Plaintiff Ritz's rights, warranting an award of exemplary damages under California Civil Code § 3294.

## VI.    COUNT THREE — TORTIOUS INTERFERENCE WITH CONTRACT

*(By Both Plaintiffs Against Both Defendants)*

**86.** Plaintiffs incorporate paragraphs 1 through 72 above by reference.

**87.** Plaintiff Ritz had a contractual relationship with the property owner under which Ritz was entitled to payment for properly-performed flooring work on the Project. The contractual relationship and Ritz's entitlement to payment were known to Defendants. Plaintiff Notis held a derivative individual economic interest in that payment stream as Ritz's principal.

**88.** Defendants intentionally interfered with the Ritz-owner contractual relationship through two independent wrongful acts:

**a. The license-hostage interference.** Defendant Nunez deliberately refused to release his New Mexico contractor's license from the Project permits after his services were terminated, with the knowledge and intent that the refusal would block the Project's continuation, stall the owner-to-Ritz payment cascade, and force Plaintiff Ritz to incur the demobilization, storage, idle-workforce, carrying, replacement-licensing, re-permitting, lost-opportunity, and re-mobilization expenses described in paragraph 50 above.

**b. The Lien-extraction interference.** Defendants recorded the Lien against the owner's property, demanded payment from the owner in exchange for release of the Lien, and accepted $80,000 from the owner in exchange for that release, with the foreseeable and actual consequence that the owner would deduct that sum from amounts otherwise payable to Ritz.

89.    Defendants' interference was wrongful by independent measure as to each act, as established by the inflated Lien arithmetic, the no-privity facts, the labor and materials exclusion in the Contract, and the regulatory privilege abuse inherent in weaponizing a contractor's license against non-obligors.

90.    Plaintiff Ritz has suffered damages in the amount of (a) $80,000 directly attributable to the owner-deduction, (b) the license-hostage expenses enumerated in paragraph 50 above, (c) consequential damages, defense costs, and reputational harm, all in amounts to be proven at trial.

91. Plaintiff Mordecai's individual economic interest in the Ritz-owner payment stream, and his interest in his personal commercial reputation as a construction industry principal, has likewise been disrupted by Defendants' interference. Notis is entitled to recover his own damages, distinct from Ritz's, arising from the interference.

92. Defendants' conduct was malicious, oppressive, and undertaken with conscious disregard for Plaintiffs' rights, warranting an award of exemplary damages under California Civil Code § 3294.

## VII. COUNT FOUR — TRADE LIBEL / BUSINESS DISPARAGEMENT

*(By Both Plaintiffs Against Both Defendants)*

93. Plaintiffs incorporate paragraphs 1 through 92 above by reference.

94. Defendants have published and continue to publish false statements concerning Plaintiffs' business — including the statement that Plaintiffs are non-paying counterparties on a Construction Contract that, by Defendants' own admission, Plaintiffs are not parties to — through the recorded Lien in the San Juan County land records, through the New Mexico Action, and through oral and written communications to third parties in the construction industry as alleged in paragraph 64.

**95.** The statements are false. Defendants' own sworn instruments confirm that no contractual relationship exists between Defendants and Plaintiffs, that Plaintiffs are not the property owner, and that Plaintiff Mordecai's name appears nowhere on the Lien.

**96.** Defendants knew the statements were false when they made them, or made them with reckless disregard for their truth or falsity, as established by Defendants' own contemporaneous sworn instruments.

**97.** The statements directly disparage the commercial reputation of Plaintiffs in the construction industry. The statements are reasonably understood by participants in that industry to mean that Plaintiffs are unreliable, that Plaintiffs do not honor their commercial commitments, and that Plaintiffs are subject to enforceable mechanic's liens for unpaid construction work — all of which is false.

**98.** The statements have caused special damages to Plaintiffs' businesses, including lost prospective contracts and impaired commercial standing, in amounts to be proven at trial.

## VIII. COUNT FIVE — UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200 ET SEQ.)

*(By Both Plaintiffs Against Both Defendants)*

**99.** Plaintiffs incorporate paragraphs 1 through 98 above by reference.

**100.** Defendants' conduct constitutes unlawful, unfair, and fraudulent business practices within the meaning of California Business and Professions Code § 17200.

**101.** The UCL applies because Defendants directed their conduct at California-domiciled Plaintiffs, solicited funds from California, and inflicted economic injury in California where Plaintiffs reside and conduct business. Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App.4th 214, 224 (1999).

**102.** Defendants' conduct is unlawful in that it violates, among other authorities:

**a. New Mexico's Construction Industries Licensing Act, NMSA 1978, § 60-13-1 et seq.** Defendant Nunez's lending of his contractor's license to non-party DMF Construction, Inc. and to the previously red-tagged unlicensed contractors on the Project, solely for the purpose of allowing those unlicensed parties to operate under cover of Defendant Nunez's licensed status, constitutes license-fronting in violation of New Mexico's licensing law.

**b.** New Mexico mechanic's Lien law, NMSA 1978, § 48-2-1 et seq., by recording a Lien unsupported by labor or materials and inflated beyond Defendants' own documented figures.

**c.** California Penal Code §§ 484 and 532 (theft by false pretenses), by inducing the $10,000 wire through a representation Defendants did not intend to honor.

**103.** Defendants' conduct is unfair in that it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 184 (1999). The unfair practices include:

**a. The license-fronting scheme.** Defendant Nunez exploited his regulatory status as a New Mexico-licensed contractor to provide unlicensed parties with the appearance of regulatory compliance, in direct contravention of the legislative purpose of New Mexico's Construction Industries Licensing Act. Use of a regulatory privilege as a cover for unlicensed operation is a paradigm unfair business practice under *Cel-Tech*.

**b. The license-hostage.** Defendant Nunez exploited his regulatory standing as a licensed contractor to inflict economic pressure on Plaintiffs and to force Plaintiffs into a cascade of demobilization, replacement-licensing, re-permitting, and delay-related expenses.

**c. Filing groundless collection efforts** as a means of extracting payment from non-obligors. *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94 (1972).

**d. Inducing wire transfers** on representations the inducer does not intend to honor.

**104.** Defendants' conduct is fraudulent in that members of the public, including Plaintiff Ritz, the property owner, and other participants in the construction industry, were and are likely to be deceived by Defendants' false representations — that Defendant Nunez was the licensed contractor operating the Project, that Plaintiffs owed money on a Project Plaintiffs did not Contract for, and that the $10,000 wire would fund corrective Project work.

**COMPLAINT**

105.   Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' conduct, within the meaning of Business and Professions Code § 17204.

106.   Plaintiffs are entitled to restitution and disgorgement, including:

107.   Restitution to Plaintiff Ritz of in excess of $600,000 in payments Plaintiff Ritz made to DMF Construction, Inc. and other Project participants in reliance on Defendant Nunez's license-fronting representation, which payments would not have been made but for that representation.

**b.** Restitution to Plaintiff Ritz of the $10,000 wired to Defendants.

**c.** Restitution to Plaintiff Ritz of the license-hostage expenses enumerated in paragraph 50 above.

**d.** Disgorgement to Plaintiff Ritz of the $80,000 Defendants extracted from the property owner that was ultimately borne by Plaintiff Ritz through owner-deduction.

**e.** Injunctive relief restraining Defendants from continuing the unfair business practices alleged herein, including injunctive relief discharging the Lien.

## IX.   COUNT SIX — FALSE ASSOCIATION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(A)(1)(A)

*(By Both Plaintiffs Against Both Defendants)*

107.   Plaintiffs incorporate paragraphs 1 through 106 above by reference.

**108.** Plaintiffs are commercial actors engaged in the interstate flooring and construction industry. Plaintiffs use their respective names in commerce.

**109.** Defendants have used in commerce, in connection with goods and services, false or misleading representations of fact that are likely to cause confusion as to the affiliation, connection, or association of Plaintiffs and the Project with Defendants and Defendants' asserted construction debt.

**110.** The false representations include, without limitation:

**a. The license-fronting representation.** Defendant Nunez's placement of his New Mexico contractor's license on the Project permits associated the Project — and by association the participants in the Project, including Plaintiff Ritz — with a licensed, regulatorily compliant construction enterprise. That association was false. The Project was being operated by unlicensed parties using Defendant Nunez's license as cover. Plaintiff Ritz relied on the false license-association in deciding to commit capital and to make payments to DMF Construction, Inc. and other Project participants. The payments Plaintiff Ritz made in reliance on that false association exceed $600,000.

**b. The recorded Lien,** published in the San Juan County land records into the stream of commercial commerce in the construction industry, falsely associating Plaintiffs with an unpaid construction obligation to Defendants.

**c. The New Mexico Action,** filed in a court of public record and disseminated through commercial reporting services and industry channels, falsely associating Plaintiffs with the same asserted obligation.

**d. Direct communications** by Defendants to third parties in the construction industry asserting that Plaintiffs are non-paying counterparties on the Project.

111.   The false representations are likely to cause confusion in the construction industry as to Plaintiffs' affiliation with Defendants, with the Project, and with the asserted debt — and as to Plaintiffs' commercial reliability and creditworthiness.

112.   Plaintiffs have been damaged by the false representations through (a) in excess of $600,000 in inducement-reliance payments made by Plaintiff Ritz; (b) loss of commercial standing in the interstate construction industry; (c) lost prospective business; and (d) consequential financial loss.

113.   Defendants' conduct is willful and exceptional within the meaning of 15 U.S.C. § 1117(a). Plaintiffs are entitled to recovery of their attorney fees and costs in addition to actual damages, disgorgement of Defendants' profits attributable to the false association (including the $80,000 extracted from the owner and the consideration Defendant Nunez received for his license-fronting), and injunctive relief restraining further dissemination of the false representations and requiring discharge of the Lien.

## X.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Ritz Flooring, Inc. and Notis  respectfully pray for judgment against Defendants as follows:

**A. On Count One (Declaratory Judgment):** A declaration that (i) no Contract, express or implied, exists between Plaintiffs and Defendants; (ii) Plaintiffs owe Defendants no money on any theory; (iii) any alleged oral guarantee is unenforceable; (iv) the Lien is invalid as against any interest of either Plaintiff; (v) the foreclosure count in the New Mexico Action is legally insufficient as to Plaintiff Notis; and (vi) Plaintiffs are entitled to discharge of the Lien;

**B. On Count Two (Conversion):** Compensatory damages of $10,000 plus prejudgment interest at the maximum lawful rate from April 26, 2024, and consequential damages in an amount to be proven at trial;

**C. On Count Three (Tortious Interference):** Compensatory damages in the amount of (i) $80,000 attributable to the owner-deduction; (ii) the license-hostage expenses enumerated in paragraph 50 above, including demobilization, storage, idle-workforce, carrying, replacement-licensing, re-permitting, lost-opportunity, and re-mobilization costs, in an amount to be proven at trial; and (iii) consequential damages, defense costs, and reputational harm, in an amount to be proven at trial;

**D. On Count Four (Trade Libel):** Special damages for lost prospective contracts and impaired commercial standing, in an amount to be proven at trial;

**E. On Counts Two through Four:** Exemplary damages pursuant to California Civil Code § 3294, in such amount as the trier of fact may award;

**F. On Count Five (UCL):** (i) Restitution of in excess of $600,000 in payments made by Plaintiff Ritz to DMF Construction, Inc. and other Project participants in reliance on Defendant Nunez's license-fronting representation; (ii) restitution of $10,000 wired to Defendants; (iii) restitution of the license-hostage expenses enumerated in paragraph 50 above; (iv) disgorgement of the $80,000 extracted from the property owner; and (v) injunctive relief restraining Defendants from continuing the unfair business practices alleged herein, including injunctive relief discharging the Lien.

**G. On Count Six (Lanham Act):** Actual damages in excess of $600,000 reflecting the payments Plaintiff Ritz made in reliance on the false license-fronting associational representation; disgorgement of Defendants' profits attributable to the false associations, including the $80,000 the Project principal / owner-paid Lien-release sum and the consideration Defendant Nunez received for license-lending; attorney fees and costs pursuant to 15 U.S.C. § 1117(a); and injunctive relief restraining further dissemination of the false representations and requiring discharge of the Lien.

**H. All Counts:** Pre- and postjudgment interest at the maximum lawful rate.

**I. All Counts:** Costs of suit, including expert witness fees where authorized.

**J. All Counts:** Attorney fees as authorized by 15 U.S.C. § 1117(a), California Code of Civil Procedure § 1021.5, and any other authority by which fees may be awarded.

**K. All Counts:** Such other and further relief as the Court deems just and proper.

## XI.     DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

Dated: June 30, 2026,

Respectfully submitted,

LAW OFFICES OF VIP BHOLA

By: _____

   V.I.P. BHOLA, ESQ. (SBN 183980)
   Attorney for Plaintiffs
   RITZ FLOORING, INC. and
   MORDECAI NOTIS

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Ritz Flooring, Inc. et al. v. Green Image Construction, LLC et al.

Case No. _____

# EXHIBIT 1

## CONSTRUCTION CONTRACT

Written Construction Contract dated October 2, 2023, between DMF Construction INC / Aztec Healthcare (owner/general) and Green Image Construction LLC (contractor).

EXHIBIT 1

## Construction Contract

This Construction Contract ("Contract") is made as of October 02, 2023 ("Effective Date") by and between DMF Construction INC and Aztec Healthcare ("Owner") of 24024 Long Valley Road, Hidden Hills, California 91302, and Green Image Constrution LLC ("Contractor") of 7537 Old Airport rd, Santa FE, New Mexico 87507.

Green Image Constrution LLC desires to provide construction services to DMF Construction INC and Aztec Healthcare and DMF Construction INC and Aztec Healthcare desires to obtain such services from Green Image Constrution LLC.

Therefore, in consideration of the mutual promises set forth below, the parties agree as follows:

**1. Description of Services.** Beginning on the Effective Date, Green Image Constrution LLC will provide to DMF Construction INC and Aztec Healthcare the following services (collectively, "Services"):

Obtain all building permits, manage construction, complete sections of work with management assistance from DMF Construction INC, obtain bids and estimates of subs, manage employees of said work and help complete the project in its entirety. Green Image will as well complete some sections of work with its employees or sub contractors in cooperation with DMF Construction INC

**2. Scope of Work.** Green Image Constrution LLC will provide all services, materials, and labor for the construction of Commercial Nursing Home described above at the property of DMF Construction INC and Aztec Healthcare located at 500 Care Lane, Aztec, New Mexico, 87410 ("Worksite").

This includes building and construction materials, necessary labor and site security, and all required tools and machinery needed for the completion of construction.

Green Image Constrution LLC is only responsible for furnishing any building improvements related to construction of the structure, but not related to landscaping, grading, walkways, painting, sewer or water systems, steps, driveways, patios, aprons, etc., unless they are specifically agreed to in writing.

**3. Plans, Specifications, and Construction Documents.** DMF Construction INC and Aztec Healthcare will make available to Green Image Constrution LLC all plans, specifications, drawings, blueprints, and similar construction documents necessary for Green Image Constrution LLC to provide the Services described herein. Any such materials shall remain the property of DMF Construction INC and Aztec Healthcare. Green Image Construction LLC will promptly return all such materials to DMF Construction INC and Aztec Healthcare upon completion of the Services.

**4. Compliance With Laws.** Green Image Constrution LLC shall provide the Services in a workmanlike manner, and in compliance with all applicable federal, state and local laws and regulations, including, but not limited to all provisions of the Fair Labor Standards Act, the Americans with Disabilities Act, and the Federal Family and Medical Leave Act.

**5. Work Site.** DMF Construction INC and Aztec Healthcare warrants that DMF Construction INC and Aztec Healthcare owns the property herein described and is authorized to enter into this Contract. Prior to the start of construction, DMF Construction INC and Aztec Healthcare shall provide an easily accessible building site, which meets all zoning requirements for the structure, and in which the boundaries of DMF



Construction INC and Aztec Healthcare's property will be clearly identified by stakes at all corners of the property. DMF Construction INC and Aztec Healthcare shall maintain these stakes in proper position throughout construction.

**6. Materials and/or Labor Provided.** Green Image Construction LLC shall provide to DMF Construction INC and Aztec Healthcare a list of each and every party furnishing materials and/or labor to Green Image Construction LLC as part of the Services, and the dollar amounts due or expected to be due with regards to provision of the Services herein described. This list of materials and/or labor shall be attached to this Contract as Exhibit A. Green Image Construction LLC declares, under the laws of New Mexico, that this list is a true and correct statement of each and every party providing materials and/or labor as part of the Services herein described.

Green Image Construction LLC may substitute materials only with the express written approval of DMF Construction INC and Aztec Healthcare, provided that the substituted materials are no lesser quality than those previously agreed upon by DMF Construction INC and Aztec Healthcare and Green Image Construction LLC.

**7. Payment.** Payment shall be made to Green Image Construction LLC, Santa FE, New Mexico 87507.

DMF Construction INC and Aztec Healthcare agrees to pay Green Image Construction LLC as follows:

Green Image will be paid 20% of the contract total for their services and will be paid in draws according to the payment schedule with AZTEC HEALTHCARE. The total payment for Green Image Services is not to exceed $250,000.00 plus any change orders and the fee will have a minimum service fee of $175,000.00 plus any legal fees and interest if all work is not completed or there is a breach of contract by the Owners of the Building. All change orders will be billed at 18% of the gross total. If the owners breach the contract with DMF Construction INC the owners will be liable for all monies owed to Green Image Construction LLC for the work performed plus interest and any legal/collection fees. This fee is work services, permits and management only and does not include labor or materials.

If any invoice is not paid when due, interest will be added to and payable on all overdue amounts at 15 percent per year, or the maximum percentage allowed under applicable laws, whichever is less. DMF Construction INC and Aztec Healthcare shall pay all costs of collection, including without limitation, reasonable attorney fees.

In addition to any other right or remedy provided by law, if DMF Construction INC and Aztec Healthcare fails to pay for the Services when due, Green Image Construction LLC has the option to treat such failure to pay as a material breach of this Contract, and may cancel this Agreement and/or seek legal remedies.

**8. Other Payment Provisions.** Payments will be made at each progress.

Demolition - $15,000.00
Rough Framing - $20,000.00
Rough Plumbing - $25,000.00
Rough Electrical - $30,000.00
Rough HVAC $55,000.00
Rough Insulation Completion $5,000.00
Drywall Completion $15,000.00
Structural Inspection Completion $10,000.00
Painting Completion $15,000.00
Doors and windows $18,000.00
Bathroom Tile $10,000.00
Finish Electric $10,000.00

Exhibit 1

Finish plumbing $10,000.00
Finish and final $12,000.00
These fees are for licensing fees and services by Green Image Construction. These fees do not include any
labor and material of the said construction costs.

**9. Term.** Green Image Constrution LLC shall commence the work to be performed within 30 days of the
Effective Date and shall complete the work on or before May 31, 2024, time being of the essence of this
Contract.

Upon completion of the project, DMF Construction INC and Aztec Healthcare agrees to sign a Notice of
Completion within 10 days after the completion of the Contract. If the project passes its final inspection and
DMF Construction INC and Aztec Healthcare does not provide the Notice, Green Image Constrution LLC
may sign the Notice of Completion on behalf of DMF Construction INC and Aztec Healthcare.

**10. Permits.** DMF Construction INC and Aztec Healthcare shall obtain all necessary building permits.
Green Image Constrution LLC shall apply for and obtain any other necessary permits and licenses required
by the local municipal/county government to do the work, the cost thereof shall be included as part of the
Payment to Green Image Constrution LLC under this Contract.

**11. Insurance.** Before work begins under this Contract, Green Image Construction LLC shall furnish
certificates of insurance to DMF Construction INC and Aztec Healthcare substantiating that Green Image
Constrution LLC has placed in force valid insurance covering its full liability under the Workers'
Compensation laws of New Mexico and shall furnish and maintain general liability insurance, and builder's
risk insurance for injury to or death of a person or persons, and for personal injury or death suffered in any
construction-related accident and property damage incurred in rendering the Services.

**12. Confidentiality.** Green Image Constrution LLC, and its employees, agents, or representatives will not at
any time or in any manner, either directly or indirectly, use for the personal benefit of Green Image
Constrution LLC, or divulge, disclose, or communicate in any manner, any information that is proprietary to
DMF Construction INC and Aztec Healthcare. Green Image Constrution LLC and its employees, agents, and
representatives will protect such information and treat it as strictly confidential. This provision will continue
to be effective after the termination of this Contract.

Upon termination of this Contract, Green Image Constrution LLC will return to DMF Construction INC and
Aztec Healthcare all records, notes, documentation, and other items that were used, created, or controlled by
Green Image Constrution LLC during the term of this Contract.

**13. Indemnification.** With the exception that this section shall not be construed to require indemnification
by Green Image Constrution LLC to a greater extent than permitted under the public policy of New Mexico,
Green Image Constrution LLC may agree to indemnify DMF Construction INC and Aztec Healthcare
against, hold it harmless from and defend DMF Construction INC and Aztec Healthcare from all claims,
loss, liability, and expense, including actual attorney's fees, arising out of or in connection with Green Image
Constrution LLC's Services performed under this Contract. This indemnity shall be provided even if DMF
Construction INC and Aztec Healthcare is partly responsible for the claim, damage, injury, or loss, but
Green Image Constrution LLC shall not provide indemnity against claims or losses deemed to be caused by
the negligence, willful misconduct, or breach of Contract of DMF Construction INC and Aztec Healthcare or
DMF Construction INC and Aztec Healthcare's agents or employees.

**14. Warranty.** Green Image Construction LLC shall provide its services and meet its obligations under this
Contract in a timely and workmanlike manner, using knowledge and recommendations for performing the
Services which meet generally acceptable standards in Green Image Constrution LLC's community and
region and will provide a standard of care equal to, or superior to, care used by service providers similar to
Green Image Construction LLC on similar projects. Green Image Construction LLC shall construct the

Exhibit 1

structure in conformance with the plans, specifications, and any breakdown and binder receipt signed by Green Image Constrution LLC and DMF Construction INC and Aztec Healthcare.

**15. Free Access to the Worksite.** DMF Construction INC and Aztec Healthcare will allow free access to work areas for workers and vehicles and will allow areas for the storage of materials and debris. Driveways will be kept clear for the movement of vehicles during work hours. Green Image Constrution LLC will make reasonable efforts to protect driveways, lawns, shrubs, and other vegetation. Green Image Constrution LLC also agrees to keep the Worksite clean and orderly and to remove all debris as needed during the hours of work in order to maintain work conditions that do not cause health or safety hazards.

**16. Utilities.** DMF Construction INC and Aztec Healthcare shall provide and maintain water and electrical service, connect permanent electrical service, gas service, or oil service, whichever is applicable, and tanks and lines to the building constructed under this Contract after an acceptable cover inspection has been completed, and prior to the installation of any inside wall cover. DMF Construction INC and Aztec Healthcare shall, at DMF Construction INC and Aztec Healthcare's expense, connect sewage disposal and water lines to said building prior to the start of construction, and at all times maintain sewage disposal and water lines during construction as applicable. DMF Construction INC and Aztec Healthcare shall permit Green Image Constrution LLC to use, at no cost, any electrical power and water use necessary to carry out and complete the work.

**17. Inspection.** DMF Construction INC and Aztec Healthcare shall have the right to inspect all work performed under this Contract. All defects and uncompleted items shall be reported immediately. All work that needs to be inspected or tested and certified by an engineer as a condition of any government department or other state agency, or inspected and certified by the local health officer, shall be done at each necessary stage of construction and before further construction can continue. All inspection and certification will be done at DMF Construction INC and Aztec Healthcare's expense.

**18. Default.** The occurrence of any of the following shall constitute a material default under this Contract:

    (a) The failure of DMF Construction INC and Aztec Healthcare to make a required payment when due.

    (b) The insolvency of either party or if either party shall, either voluntarily or involuntarily, become a debtor of or seek protection under Title 11 of the United States Bankruptcy Code.

    (c) A lawsuit is brought on any claim, seizure, lien or levy for labor performed or materials used on or furnished to the project by either party, or when there is a general assignment for the benefit of creditors, application or sale for or by any creditor or government agency brought against either party.

    (d) The failure of DMF Construction INC and Aztec Healthcare to make the building site available or the failure of Green Image Constrution LLC to deliver the Services in the time and manner provided for in this Contract.

**19. Remedies.** In addition to any and all other rights a party may have available according to law of New Mexico, if a party defaults by failing to substantially perform any provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), the other party may terminate the Contract by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving the said notice shall have 30 days from the effective date of said notice to cure the default(s) or begin substantial completion if completion cannot be made in 30 days. Unless waived by a party providing notice, the failure to cure or begin curing, the default(s) within such time period shall result in the automatic termination of this Contract.

**20. Force Majeure.** If performance of this Contract or any obligation thereunder is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable

Exhibit 1

to carry out its obligations gives the other party prompt written notice of such event, then the obligations of the party invoking this provision shall be suspended to the extent necessary by such event. The term Force Majeure shall include, but not be limited to, acts of God, plague, epidemics, pandemic, outbreaks of infectious disease, or any other public health crisis, including quarantine or other employee restrictions, fire, explosion, vandalism, storm, casualty, illness, injury, general unavailability of materials or other similar occurrence, orders or acts of military or civil authority, national emergencies, insurrections, riots, wars, strikes, lock-outs, work stoppages, or supplier failures. The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.

**21. Entire Agreement.** This Contract contains the entire agreement of the parties, and there are no other promises or conditions in any other contract or agreement whether oral or written concerning the subject matter of this Contract. Any amendments must be in writing and signed by each party. This Contract supersedes any prior written or oral agreements between the parties.

**22. Severability.** If any provision of this Contract will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Contract is invalid or unenforceable but that by limiting such provision, it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

**23. Amendment.** This Contract may be modified or amended in writing if the writing is signed by each party.

**24. Governing Law.** This Contract shall be construed in accordance with, and governed by the laws of New Mexico, without regard to any choice of law provisions of New Mexico or any other jurisdiction.

**25. Notice.** Any notice or communication required or permitted under this Contract shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the address set forth in the opening paragraph or to such other address as one party may have furnished to the other in writing.

**26. Waiver of Contractual Right.** The failure of either party to enforce any provision of this Contract shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract.

**27. Assignment.** Neither party may assign or transfer this Contract without the prior written consent of the non-assigning party, which approval shall not be unreasonably withheld.

**28. Signatories.** This Contract shall be signed on behalf of DMF Construction INC and Aztec Healthcare by Douglas Martin Fierro, President and on behalf of Green Image Constrution LLC by Sergio Nunez, CEO (Contractor's License: 366173) and shall be effective as of the date first written above.

Exhibit 1



The Owner:
DMF Construction INC and Aztec Healthcare

By: _____    Date: 10/3/24

Douglas Martin Fierro
President

The Contractor:
Green Image Constrution LLC
Contractor's License: 366173

By: SERGIO NUÑEZ    Date: 10/3/24
Sergio Nunez / OWNER GREEN IMAGE CONST. LLC
CEO

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Ritz Flooring, Inc. et al. v. Green Image Construction, LLC et al.

Case No. _____

# EXHIBIT
# 2

## NEW MEXICO COMPLAINT

Complaint filed November 13, 2025, Green Image Construction, LLC et al.
v. Aztec Healthcare, LLC et al., Case No. D-1116-CV-2025-01602,
Eleventh Judicial District Court, San Juan County, New Mexico.

EXHIBIT 2

FILED
11th JUDICIAL DISTRICT COURT
San Juan County
11/13/2025 3:07 PM
JODIE SCHWEBEL
CLERK OF THE COURT
Alexis Amos

**STATE OF NEW MEXICO**
**COUNTY OF SAN JUAN**
**ELEVENTH JUDICIAL DISTRICT COURT**

Case No.:  D-1116-CV-2025-01602

**GREEN IMAGE CONSTRUCTION, LLC**, a New Mexico Limited liability company,
and **SERGIO NUNEZ**,

                    Plaintiffs,

vs.

**AZTEC HEALTHCARE, LLC**, a Delaware Limited liability company,
**500 CARES LANE NM, LLC,** a Delaware Limited liability company,
**ESTHER KAPLAN** an individual employed by Aztec Healthcare and/or
500 Cares Lane NN, LLC;
**RITZ FLOORING, INC.,** a California Corporation and **NOTIS MORDECAI**, CEO;
**DMF CONSTRUCTION**, a California Corporation and **DOGULAS MARTIN FIERRO**,
CEO;

                    Defendants,

## COMPLAINT

**COMES NOW** the Plaintiffs, Green Image Construction, LLC and Sergio Nunez, by and
through their counsels the New Mexico Firm, LLC (Nathaniel V. Thompkins, Esquire) and the
Jewell Law Firm (Tommy Jewell, Esquire) and for their Complaint state as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiffs are **Green Image Construction, LLC** ("hereinafter referred to as
"**Green Image**") a licensed New Mexico General Contractor and **Sergio Nunez** (herein after
referred to as "**Sergio**") a licensed New Mexico General Contractor. Sergio is the Qualifying
Party ("QP") for the with a business address of 7537 Old Airport Rd., Suite A, Santa Fe, NM
87507.

2.      Defendant, **AZTEC HEALTHCARE, LLC,** (hereinafter "Aztec Healthcare") is
a Delaware LLC and its registered agent for service of process is the Corporation Service
Company located at 25 Little Falls Drive, Wilmington, DE 19808.

3. Defendant, **500 CARES LANE NM, LLC**, (hereinafter "500 Cares Lane") is a Delaware LLC its registered agent for service of process is the Corporation Service Company located at 25 Little Falls Drive, Wilmington, DE 19808. 500 Cares Lan, NM LLC is identified as the owner of property were construction work was being performed by Green Image & Sergio Nunez.

4. Defendant, **ESTHER KAPLAN** ("Kaplan") is employed by Aztec Healthcare and/or 500 Cares Lane, upon knowledgeable information and belief Kaplan is an Employee/Manager with Aztec Healthcare and/or 500 Cares Lane. Kaplan controlled the work, approval and payments for work performed by the Green Image and Sergio. Kaplan is individually responsible for approving the work performed by Green Image and Sergio on the project located at Aztec, New Mexico, 87410.

5. Defendants, **RITZ FLOORING, INC.** ("Ritz") (2735092) is a California Corporation located at 15001 Oxnard Street, Van Nuys, CA 91411. Ritz's CEO, Chief Financial Officer, Secretary and Registered Agent for Service of Process is **Notis Mordecai** ("**Notis**") The Registered Agent's address, for service of process, is 15001 Oxnard Street, Van Nuys, CA 91411. Notis and Ritz are sued jointly and individually.

6. Defendant, **DMF CONSTRUCTION** ("DMF") is a California Corporation located at 24024 Long Valley Rd., Hidden Hills, CA 91302. **Douglas Martin Fierro** ("**Douglas**") is the CEO, Chief Financial Officer and Secretary for DMF. Douglas is the Registered Agent for Service of Process for DMF. DMF's address, for Service of Process is 24024 Long Valley Rd., Hidden Hills, CA 91302. DMF and Douglas are sued jointly and individually.

## I.    FACTS COMMON TO ALL COUNTS

6.    Plaintiffs incorporate by reference all of the foregoing paragraphs 1 through 7, as if fully set forth.

7.    On or about October 4, 2023, Douglas of DMF contacted Green Image and its owner Sergio. Douglas advised Sergio that he was working on a construction project in Aztec, New Mexico and that the County Inspector advised them to cease working on the project and was threatening to issue "red tag" because the project did not have a licensed New Mexico General Contractor overseeing the work. Douglas advised Sergio, that Aztec Healthcare Inc. hired Ritz as the Project Manager who controlled the work to be performed on the project located at 500 Cares Lane, Aztec, New Mexico.

8.    Because the San Juan County Inspector had halted all work on the project, Notis and Douglas desperately needed a licensed New Mexico General Contractor and they verbally agreed to hire Green Image and Sergio.

9.    On or about October 4, 2023, Douglas of DMF contacted Green Image and Sergio regarding a construction project for Defendant, Aztec Healthcare. Douglas advised Sergio that he was working on a construction project in Aztec, New Mexico and that the County Inspector halted all work on the project and was going to issue a "red tag" on the project if they did not obtain a licensed New Mexico General Contractor to oversee and perform work on the project. Douglas advised Sergio, that Aztec Healthcare hired Ritz and its President, Notis, as the Project Manager for the project located at 500 Cares Lane, Aztec, New Mexico.

10.    Douglas informed Sergio that the San Juan County inspector, assigned to the 500 Cares Lane construction project, had stopped all the contractors from continuing to work on the project until they immediately hired a licensed New Mexico General Contractor.

11.     Notis advised Sergio that Aztec Healthcare, Ritz, DMF and all of their subcontractors could not resume working until Sergio, as a Licensed Contractor, immediately applied for and obtain a number of construction work permits from the San Juan County's Offices. Notis guaranteed Sergio that if he pulled the required number of Work Permits that he (Notis), as the project manager, would guarantee Sergio payment for his and his company's services. Notis stated to Sergio, that "anytime you do work, come to me and I'll personally pay you for your work." Because of the urgency of project and the need for a licensed New Mexico General Contractor Notis, without a written contract, verbally guaranteed Sergio payment for Green Image's services if Sergio filed for and obtained all the necessary permits to continue the construction project at 500 Cares Lane, Aztec, NM.

12.     After Green Image Construction and Sergio's initial telephonic meetings with Notis, Sergio obtained all the necessary work permits from San Juan County. Sergio wrote checks from his business, in order to obtain all the necessary work permits. Notis was fully aware that in order for work to resume on the construction project, that Sergio had to use his CID Contractor's license in order to obtain the County permits and for work to continue on the project.

13.     Notis promised Sergio that if was successful in pulling all of the needed San Juan county work permits, that he (Notis) would guarantee Sergio payments for his services. Notis also stated to Sergio that, "anytime you do work on this project, come to me and I'll pay you for your work." Notis advised d Sergio that all of the contractors need his approval for payments for the work each performed on the project. Notis also confirmed with Sergio that all of the sub-contractors, which included electricians, plumbers, framers, and construction workers, are operating under Sergio's General Contractor's CID license.

14.     After speaking with Notis, Douglas again spoke with Sergio and advised Sergio that he would draft a contract between DMF, Aztec Healthcare and Green Image Construction. Douglas informed Sergio that, before he contacted and approved Sergio to use his Contractor's License, that none of the Contractors and Sub-contractors were licensed in New Mexico. Sergio accepted Notis and Douglas' proposals and personally paid for and filed to obtain the necessary San Juan County Work Permits.

15.     On or about October 18, 2023, Douglas drafted a contract and presented it to Sergio and Green Image Construction. The Contract was signed by Douglas for DMF and as a agency for Aztec Healthcare on October 22, 2023. [A true and correct copy of the "Construction Contract" is attached hereto as **Exhibit A**].

16.     The Contract identifies the parties to the contract as "DMF Construction INC", "Aztec Healthcare" ("Owner") … and "Green Image Construction, LLC" as ("Contractor") …". [The Contract is attached hereto as **ExhibitA**]. DMF and Douglas represented, in the Contract, that he had full and complete authority to sign the contract on behalf of Aztec Healthcare, LLC ("Owner"). [**Exhibit A**, pg.7, ¶ 28, Signatories].

17.     Paragraph Number 1 in the Contract provided that beginning on October 22, 2023, Green Image Construction, LLC will provide to DMF Construction, INC and Aztec Healthcare [with] the following services (collectively, "Services"). Green Image, under the contract, was also required to "[o]btain all building permits, manage construction, complete sections of work with management assistance from DMF Construction INC, obtain bids and estimates of subs, manage employees of said work and help complete the project in its entirety. Green Image will … complete some sections of work with its employees or sub-contractors in cooperation with DMF Construction INC."

18.    The Contract's "Scope of Work" stated the following: "Green Image Construction, LLC will provide all services, materials, and labor for the construction of Commercial Nursing Home described above at the property of DMS Construction INC and Aztec Healthcare located at 500 Care Lane, Aztec, New Mexico, 87410 ("Worksite")."

19.    The Contract's "Work Site" provision states that, "DMF Construction INC and Aztec Healthcare warrants that DMF Construction INC and Aztec Healthcare owns [sic] the property herein described and is authorized to enter into this Contract."

20.    The payment provision of the Contract states: "Payment shall be made to Green Image Construction LLC, Santa Fe, New Mexico 87507." DMF Construction INC and Aztec Healthcare agrees [sic] to pay Green Image as follows:

> "Green Image will be paid 12% of the contract total or approx. **$1,256,785.31** for their services and will be paid in draws according to the payment schedule with AZTEC HEALTHCARE. The total payment for Green Image Services is not to exceed **$250,000.00** including any change orders and the fee will have a minimum service fee of **$150,000.00**. All change orders will be billed at 18% of the gross total. **If the owners breach the contract with DMF Construction INC the owners will be liable for all monies owed to Green Image Construction LLC for the work performed plus interest and any legal/collection fees**. This fee is work services, permits and management only and does not include labor or materials."

21.    The Contract further provides: "If any invoice is not paid when due, interest will be added to and payable on all overdue amounts at 15 percent per year, or the maximum percentage allowed under applicable laws, whichever is less. DMF Construction INC and Aztec Healthcare shall **pay all costs of collection, including without limitation, reasonable attorney fees**."

22.    "**Other Payment Provisions**. Payments will be made at each progress and paid when each phase is more than 50% completed.

> Start of Contract - $15,000.00
> Rough Framing - $25,000.00

Rough Plumbing - $25,000.00
Rough Electrical - $25,000.00
Rough HVAC - $25,000.00
Windows and Doors $10,000.00
Drywall Completion $10,000.00
Finish and final $15,000.00

These fees are for licensing fees and services by Green Image Construction.

These fees do not include any labor and material of the said construction costs and is a fixed price fee for the project.

23.    In accordance with the "**Term"** of the Contract, Green Image Construction, LLC **shall** commence the work to be performed and obtain permits within 15 days of the Effective Date of the contract."

24.    Paragraph 17 of the Contract states that, "DMF Construction INC and Aztec Healthcare shall have the right to inspect all work performed under this Contract. **All defects and uncompleted items shall be reported immediately**. All work that needs to be inspected or tested and certified by an engineer as a condition of any government department or other state agency, or inspected and certified by the local health officer, shall be done at each necessary stage of construction and before further construction can continue. All inspection and certification will be done at DMF Construction INC and Aztec Healthcare's expense."

25.    Under the Contract, the following is defined as constituting a material default:

> (a)The **failure of DMF Construction INC and Aztec Healthcare to make a required payment when due**.

26.    Under the Contract's "**Remedies**" it provides: "… if a party defaults by failing to substantially perform any provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), the other party may terminate the Contract by **providing written notice to the defaulting party**. This **notice shall describe with**

**sufficient detail the nature of the default. The party receiving the said notice shall have 30 days from the effective date of said notice to cure the default(s) or begin substantial completion** if completion cannot be made in 30 days."

27.    Regarding the identity of who will sign the Contract, it provides: "**Signatories.** This Contract shall be **signed on behalf of DMF Construction INC and Aztec Healthcare by Douglas Martin Fierro, President** and on behalf of Green Image Construction, LLC by Sergio Nunez, CEO (Contractor's License: 366173) and shall be effective as of the date first written above."

28.    After the Contract was signed, Douglas informed the project manager, Notis, and Ms. Esther Kaplan (hereinafter referred to as "Kaplan") a Manager/Employee of Aztec Healthcare and 500 Cares Lane, NM LCC, that Green Image Construction and Sergio are New Mexico licensed General Contractors and has signed the contract to provide all services, materials, and labor for the construction of Commercial Nursing Home described above and located at 500 Care Lane, Aztec, New Mexico, 87410 ("Worksite").

29.    Douglas arranged a telephonic introduction of Sergio and Kaplan. During the meeting, Kaplan informed Sergio that she was a Manager with Aztec Healthcare and also worked for the corporation which actually owned the property, 500 Cares Lane, NM LLC. Kaplan advised Sergio that she coordinated and set-up Zoom conference call meetings for all the contractors and sub-contractors to discuss their progress and/or problems they may encounter during the performance of the projects contractor work.

30.    After the contract was signed by Douglas and Sergio, Kaplan and all the sub-contractors attended and participated in numerous Zoom conference call meetings where they discussed the project's progress work and determined if any issues needed to be handled. During

the Zoom conference calls Notis, as the project Manager, would take the lead and provide an update report to Kaplan regarding the progress of work on the project. Douglas would provide Kaplan with a construction progress report. In addition, all Contractors and Sub-contractors were required to report, provide and discuss their progress on their work to Kaplan. Over the period of time that Sergio performed and supervised the construction work, there were seven (7) to eight (8) Zoom conference call meetings that took place.

31.    During the seven (7) to eight (8) zoom conference calls, neither Kaplan, Notis, Douglas, or any other subcontractor associated with the Aztec Healthcare project ever informed Sergio that the construction work performed by Green Image was not up to industry standards. Upon credible information and belief, Kaplan, terminated Douglas' and DMF's involvement in the Aztec Healthcare project. Shortly or simultaneously, Sergio received an email from Kaplan wrongfully terminating the contact and advising Sergio that Green Image Construction was was removed from the project. The email did not describe with sufficient detail the nature or reasons for Sergio and/or Green Image's removal. Additionally, the email did not provide Sergio or Green Image with thirty (30) day notice and the opportunity to cure whatever the alleged default Kaplan said existed and time of the email.

32.    Green Image and Sergio first learned from Plaintiff's Complaint that Aztec Healthcare is not the actual owner of the property located at 500 Cares Lane, NM. Upon credible information and belief, Sergio has learned that the record owner of the property where the project was located is own "500 Cares Lane, NM LLC". 500 Cares Lane, NM, LLC was issued a Warranty Deed to the property by the Evangelical Lutheran Good Samaritan Society of North Dakota on October 23, 2018. Attached to the Plaintiff's Complaint is "Exhibit A" and is a Warranty Deed that identifies 500 Cares Lane, NM, LLC as the owner in the property's "Legal

Description". 500 Cares Lane, NM LL is both a necessary and indispensable party to this litigation.

33.    As of the date of the filing of this Complaint Sergio & Green Image have not been paid by any of the parties for the promises, representations, written and oral agreements.

## COUNT I

## QUANTUM MERUIT (UNJUST ENRICHMENT)

34.    Plaintiffs incorporate by reference all of the foregoing paragraphs 1 through 33, as if fully set forth.

35.    Aztec Healthcare, Ritz, Notis, DMF, Douglas and Kaplan by themselves individually or as agents for Aztec Healthcare represented to Green Image and Sergio that they would pay for all services, materials, and labor for the construction of Commercial Nursing Home described at 500 Care Lane, Aztec, New Mexico, 87410 and which were performed by Green Image and Sergio.

36.    Aztec Healthcare, Ritz, Notis, DMF, Douglas and Kaplan all accepted the construction benefits provided by Green Image and Sergio, at the expense of Green Image and Sergio.

37.    Aztec Healthcare, Ritz, Notis, DMF, Douglas and Kaplan are liable for all services, materials, and labor provided by Green Image and Sergio for the construction of the Commercial Nursing Home located at 500 Care Lane, Aztec, New Mexico, 87410.

38.    Ritz Flooring and Notis are liable for the verbal representations and guarantees made as the "Project Manager". Ritz Flooring and Notis, guaranteed payment to Green Image and Sergio for all services, materials, and labor performed at the worksite located at 500 Care Lane, Aztec, New Mexico, 87410.

39.    Kaplan, Aztec Healthcare and 500 Cares Lane are liable for all services, materials, and labor provided by Green Image and Sergio for the construction work performed and material purchased and delivered at the project worksite located at 500 Care Lane, Aztec, New Mexico, 87410.

40.    At no time, during the delivery of services by Green Image and Sergio to Aztec Healthcare, Kaplan, Ritz, Notis, DMF and Douglas did the any of the Defendants complain about the level of services, quality of workmanship, the materials or labor provided.

41.    Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF, Douglas and Kaplan prior to commencing construction work on the project failed to hire a licensed New Mexico general contractor for the project. Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF, and Douglas all knew that Green Image and Sergio relied upon their representations, both verbal and those set forth in the written contract. Green Image and Sergio were wrongfully fired by Aztec Healthcare, 500 Cares Lane, and Kaplan. However, Aztec Healthcare, 500 Cares Lane, and Kaplan illegally continued to perform construction work under Green Image and Sergio's work permits that were obtained under Green Image and Sergio's New Mexico contractor's license. Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, and Notis continued to illegally work under the work permits obtained by Green Image and Sergio. Sergio immediately notified Aztec Healthcare, Kaplan, Ritz and Notis that they were not allowed to use the work permits Green Image and Sergio had obtain from the County of San Juan, New Mexico.

42.    Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis and Kaplan, jointly and/or individually, failed to pay for the services, materials and labor provided by Green Image and Sergio on the project.

43.    It is unjust for Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, and Notis to retain the benefits provided by Green Image and Sergio without paying for the value of the work provided.

**WHEREFORE**, Green Image and Sergio request damages including compensatory damages, pre-judgment and post judgment interest, reasonable attorney fees plus court costs and expenses.

## COUNT II
### MALICIOUS BREACH OF CONTRACT (ORAL & WRITTEN)

44.    Green Image and Sergio incorporate by reference all of the foregoing paragraphs 1 through 44, as if fully set forth.

45.    Green Image and Sergio had a valid verbal and written contract with the Aztec Healthcare, Kaplan, Ritz, Notis, DMF and Douglas.

46.    The contractual agreement included the necessary elements of offer, acceptance and consideration.

47.    Green Image and Sergio fulfilled all the necessary requirements requested by Aztec Healthcare, Kaplan, Ritz, Notis, DMF and Douglas and obtained the required San Juan County work permits which included coverage for all of the subcontractors who were also not licensed New Mexico contractors or subcontractors.

48.    Green Image and Sergio fulfilled their duties and/or were ready to complete the fulfillment of their contractual obligations.

49.    Aztec Healthcare, Kaplan, Ritz, Notis, DMF and Douglas failed to perform their duties under the verbal and written contract and never advised Green Image and Sergio that they had not fulfilled any of their duties under the contract. In fact, Aztec Healthcare, Ritz, Notis, DMF, Douglas and Kaplan, after wrongfully terminating Green Image and Sergio oral and

written contract, illegally continued working on the project using the San Juan County work permits obtained by Green Image and Sergio. In New Mexico any General Contractor that obtains work permits is required to supervise the work perform while the Contract's permits are being used. When Green Image and Sergio were terminated Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, and Notis were prohibited from working under the permits obtained by Green Image and Sergio.

50.     Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis all failed to perform the material parts of their oral and written contractual obligations. Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas refused to pay Green Image and Sergio for all services, materials, and labor that it performed on the construction project.

51.     As a direct and proximate result of Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF, Douglas and Kaplan breached the oral and written contract with Green Image and Sergio. As a direct and proximate result, Green Image and Sergio have incurred harm and financial losses directly from the acts and actions of Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas' breaches of contract.

52.     Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas' conduct constitutes fraud and their actions in breaching the verbal and written contracts and then relying upon Green Image and Sergio's work permits to complete the project, was malicious, wanton, and/or reckless.

53.     Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas acted with malicious, wanton, and/or reckless disregard for the rights of Green Image and Sergio.

54.     Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas's tortious conduct was especially egregious and not merely intentional and was done expressly for financial gain. The conduct warrants the imposition of punitive damages.

55.     Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas' tortious conduct induced Green Image and Sergio to enter into the oral and written contract, knowing that they never intended to compensate Green Image and Sergio.

**WHEREFORE**, Green Image and Sergio request damages including compensatory damages, punitive damages, pre-judgment and post judgment interest, reasonable attorney fees plus court costs and expenses.

## COUNT III
## ESTOPPEL

56.     Green Image and Sergio incorporate by reference all of the foregoing paragraphs 1 through 57, as if fully set forth.

57.     Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas by themselves and by and through their Agents caused Green Image and Sergio to believe that they had authority too verbally and in writing enter into a contractual relationship. Further, Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF, Douglas and Kaplan caused Green Image and Sergio to believe that Kaplan, Notis, Douglas, Ritz and DMF had authority to verbally and in writing approve the hiring of Green Image and Sergio as the general contractor on the project and to provide construction related services.

58.     Aztec Healthcare, Kaplan, Ritz, Notis, DMF and Douglas's through their representations and agents knew that Green Image and Sergio relied upon their representations regarding the construction project at 500 Cares Lane, Aztec, New Mexico and their payment for the services provided by Green Image and Sergio. Aztec Healthcare, Kaplan, Ritz, Notis, DMF

and Douglas failed to take reasonable steps to notify Green Image and Sergio that said representations were false and/or misleading.

59.    Aztec Healthcare, Kaplan, Ritz, Notis, DMF and Douglas are estopped from denying the intentional or negligent representations made by Kaplan, Notis and Douglas and regarding the use of Green Image and Sergio's New Mexico General Contractor's license to resume work on the project after the San Juan Inspector had halted all construction work due to the fact that none of the contractors on the project held a New Mexico Contractor's license.

60.    Green Image and Sergio detrimentally relied upon the representations made by Aztec Healthcare, 500 Cares Lane, Kaplan, Ritz, Notis, DMF and Douglas.

61.    Aztec Healthcare,  Kaplan, Ritz, Notis, DMF and Douglas's representations were expressed and/or implied and sufficiently definite enough to induce Green Image and Sergio to believe that they all would pay for all services, materials, and labor related to the construction work performed by Green Image and Sergio.

62.    As a direct and proximate result of Aztec Healthcare,  Kaplan, Ritz, Notis, DMF and Douglas' misrepresentations, Green Image and Sergio suffered damages in an amount to be determined a trial.

## COUNT IV

### FORECLOSURE OF LIEN UPON REAL PROPERTY
(N.M. Stat. Ann. § 48-2-6)

63.    Green Image and Sergio s incorporate by reference all of the foregoing paragraphs 1 through 63, as if fully set forth.

64.    Green Image and Sergio provided Aztec Healthcare, Kaplan, Ritz, Notis, DMF and Douglas with services, materials, and labor related to the construction project at 500 Cares Lane, Aztec, New Mexico.

65.     Green Image and Sergio, in performing and providing construction services, materials, and labor obtained the required San Juan County work permits that only a licensed New Mexico General Contractor could obtain in order to have the San Juan County Inspector lift the "no-work" verbal order issued and necessary to resuming work on the project's construction work.

66.     Aztec Healthcare,  Kaplan, Ritz, Notis, DMF and Douglas failed to inform Green Image and Sergio that DMF and Douglas had no authority to authorize or contract, on behalf of Aztec Healthcare.

67.     As part of Green Image and Sergio's Complaint, they hereby, re-assert their Notice and right to enforce their Lien against Aztec Healthcare, 500 Cares Lane.

68.     **WHEREFORE,** Green Image and Sergio requests that this Court enforce the Lien upon Aztec Healthcare's and/or 500 Cares Lane, NM LLC's real property until either one or both pay for the services, materials, and labor related to the construction work performed by Green Image and Sergio.

**RESPECTFULLY SUBMITTED:**                          **RESPECTFULLY SUBMITTED:**

/s/ Nathaniel V. Thompkins            and           /s/ Tommy Jewell
Nathaniel V. Thompkins                              Tommy Jewell
NEW MEXICO FIRM, LLC                                JEWELL LAW OFFICES
103 St. Francis Drive, Unit A                       500 Marquette Avenue, N.W., Ste. 150
Santa Fe, NM  87501                                 Albuquerque, NM 87102-5316
Telephone:  (505) 988-9750                          Phone: (505) 247-7426
Plaintiffs                                          Plaintiffs
a

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleadings was electronically filed in the Eleventh Judicial District Court's electronic filing system, which caused a copy to be served upon counsel for the Plaintiff entered in this case via the Odyssey E-file and Serve system on November 12, 2025.

*/s/ Nathaniel V. Thompkins*
Nathaniel V. Thompkins

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Ritz Flooring, Inc. et al. v. Green Image Construction, LLC et al.

Case No. _____

# EXHIBIT

# 3

## CLAIM OF LIEN

Claim of Lien recorded May 23, 2024, with the San Juan County Clerk,
Instrument No. 202404142, Book 1709 at Page 331.

EXHIBIT 3

**Mechanic's Lien**

State of New Mexico

County of San Juan

Notice is hereby given that on November 22, 2023, Sergio Nunez, of 7537 old airport rd, Santa
Fe, New Mexico 87507, a Contractor, commenced services at the Comercial building ( Aztec
healthcare) located at 500 Care lane, Aztec, in the County of San Juan State of New Mexico
more specifically known and legally described as:

> Aztec healthcare .500 care ln Aztec,NM 87410
> building location

Claimant claims a lien in the amount of $185,000.00 on the Comercial building ( Aztec healthcare)
and the premises or real estate on which it is erected or built, belonging to Esther Kaplan whose
address is 4525 Wilshire Blvd, Los Ángeles, California 900010. For satisfaction of a claim which
became due on May 14, 2024, upon completion of services, for Green Image construction was
hired to get permits for General construction services,supervised construction,all faces of the
building project until is completed

The Claimant's original contract amount, including extras, totals $150,840.00. To date the
Claimant has received payment in the total amount of $10,000.00, leaving a remaining balance of
$185,000.00. For this reason, Claimant claims a construction lien upon the above described real
property in the amount of $185,000.00.

Claimant signed a contract dated November 22, 2023 and was employed or furnished labor,
services, equipment and/or materials under an agreement with Douglas Fierro ( DMF construction
INC), Santa Fe, Santa Fe, New Mexico, 87507.

Under the contract terms the following was expected: 7. Payment. Payment shall be made to
Green Image Constrution LLC, Santa FE, New Mexico 87507.

DMF Construction INC and Aztec Healthcare agrees to pay Green Image Constrution LLC as
follows:

Green Image will be paid 12% of the contract total or approx $1,256,785.31 for their services
and will be paid in draws according to the payment schedule with AZTEC HEALTHCARE. The
total payment for Green Image Services is not to exceed $250,000.00 including any change orders
and the fee will have a minimum service fee of $150,000.00. All change orders will be billed at
18% of the gross total. If the owners breach the contract with DMF Construction INC the owners
will be liable for all monies owed to Green Image Construction LLC for the work performed plus
interest and any legal/collection fees. This fee is work services, permits and management only and
does not include labor or materials.

"SEE EXHIBIT A"

202404142    05/23/2024 10:07 AM
1 of 3    B1709 P331 $25.00
San Juan County, NM  TANYA SHELBY

This is a RocketLawyer.com document.

---

STATE OF NEW MEXICO
COUNTY OF SAN JUAN
I HEREBY CERTIFY THAT THE FOREGOING
Mechanics Lien    3pgs.
IS A TRUE COPY OF THE ORIGINAL ON FILE IN MY
SAID OFFICE THIS ‾23‾    DAY OF
‾May‾    20 ‾24‾
Tanya Shelby    CLERK
Carl Truer    DEPUTY

If any invoice is not paid when due, interest will be added to and payable on all overdue amounts at 15 percent per year, or the maximum percentage allowed under applicable laws, whichever is less. DMF Construction INC and Aztec Healthcare shall pay all costs of collection, including without limitation, reasonable attorney fees.

In addition to any other right or remedy provided by law, if DMF Construction INC and Aztec Healthcare fails to pay for the Services when due, Green Image Constrution LLC has the option to treat such failure to pay as a material breach of this Contract, and may cancel this Agreement and/or seek legal remedies.

8. Other Payment Provisions. Payments will be made at each progress and paid when each phase is more than 50% completed.[SEP][SEP]Start of Contract - $15,000.00[SEP]Rough Framing - $25,000.00[SEP]Rough Plumbing - $25,000.00[SEP]Rough Electrical - $25,000.00[SEP]Rough HVAC - $25,000.00 [SEP]Windows and Doors $10,000.00[SEP]Drywall Completion $10,000.00[SEP]Finish and final $15,000.00[SEP]These fees are for licensing fees and services by Green Image Construction. These fees do not include any labor and material or additional supplements .

Sergio Nunez, Claimant, being first duly sworn on oath according to law, deposes and says:

I have read the foregoing Mechanic's Lien, know the contents thereof and state that the same is true of my own personal knowledge, except those matters stated upon information and belief, and, as to those matters, I believe them to be true.

**Claimant:**

_Sergio Nunez_                     **Date:** 5/23/2024
Sergio Nunez
7537 old airport rd
Santa Fe, New Mexico 87507
5055701641

Subscribed and sworn to before me this 23 day of ___May___ , 2024.
By Sergio Nunez

_Natalie Beulah Jensen_
Notary Public
State of New Mexico
My Commission Expires: March 28, 2027

202404142    05/23/2024 10:07 AM
2 of 3        B1709 P331
San Juan County, NM  TANYA SHELBY

NATALIE BEULAH JENSEN
Notary Public - State of New Mexico
Commission # 1140026
My Comm. Expires Mar 28, 2027

This is a RocketLawyer.com document.

EXHIBIT A

Dear Ms. Kaplan:

This will serve as a notice of default and notice of breach by you and your company. As of the time of this letter, your company owes $140 840.00 dls ,plus 15% interest anual and permits fees before interest. This amount has been due for at least 5 months.

I have also discovered that representatives from your company have been hiring unauthorized workers to conduct construction work on the project using the permits that were pulled under my license, in violation of New Mexico law and an infringement on my rights as a licensed contractor. Essentially, your company's actions have exposed me to legal violations and civil liability. THIS IS A DEMAND THAT YOU CEASE ALL ILLEGAL AND UNAUTHORIZED ACTIVITIES IMMEDIATELY.

Based on your company's overdue payments, I will be filing a mechanic's lien shortly. I will also be reporting your company and the project to the New Mexico CID(construction industry division)for, inter alia, unauthorized use of the permit that I pulled, my license, hiring authorized workers to perform construction work, conducting unpermitted work, and any other violation that I deem worthy of New Mexico to investigate.

I look forward to your immediate cooperation. If you comply with the law, timely, I will waive interests that are also due. Please remit the money your company owes to me as well as written confirmation that your company will cease all illegal and authorized activities by 3:00 p.m. on May 14, 2024. Your company's failure to comply will result in mechanic's liens, investigations by the proper authorities, and a lawsuit.
Please call me to discuss
Best regards Sergio Nunez (Green Image Construction,llc) (505)5701641

202404142    05/23/2024 10:07 AM
3 of 3        B1709 P331
San Juan County, NM TANYA SHELBY

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Ritz Flooring, Inc. et al. v. Green Image Construction, LLC et al.

Case No. _____

# EXHIBIT

# 4

## WIRE TRANSFER CONFIRMATION

Confirmation of $10,000 wire transfer sent April 26, 2024, from Ritz Flooring, Inc. Chase Bank business account ending 8195 to Sergio Nunez individually.

EXHIBIT 4



**Wire transfer**

# You wired funds from your account

Here are the details:

| | |
|---|---|
| Account ending in | (...8195) |
| Sent to | SERGIO NUNEZ |
| Amount (USD) | $10,000.00 |
| Sent on | Apr 26, 2024 4:48PM ET |

You are receiving this alert because this transaction is more than the $125.00 limit you set. Visit chase.com/alerts to view or manage your settings.

**Review account**

